**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF FLORIDA**

| | |
|---|---|
| AWARENESS AVENUE JEWELRY LLC and MIKKEL GULDBERG HANSEN<br><br>Plaintiffs,<br><br>v.<br><br>THE PARTNERSHIPS and UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A"<br><br>Defendants. | Case No.: 8:23-cv-00002 |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF PLAINTIFFS' EX-**

**PARTE MOTION FOR TEMPORARY RESTRAINING ORDER,**

**INCLUDING A TEMPORARY INJUNCTION, A TEMPORARY ASSET**

**RESTRAINT, AND EXPEDITED DISCOVERY**

Michael A. Hurckes, Esq.
Florida Bar No. 1040918
MAH Advising PLLC
3030 N. Rocky Point Drive W., #150
Tampa, FL 33607
Tel.: (917) 791-0639
Attorneys for Plaintiff

1

# TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................2

TABLE OF AUTHORITIES ...........................................................3

I.   INTRODUCTION ...................................................................4

II.  FACTS ......................................................................................4

   A.  Parties ..............................................................................4

   B.  Defendants' Copyright Infringement ......................................6

III.  A TEMPORARY RESTRAINING ORDER SHOULD ISSUE
AGAINST DEFENDANTS ................................................................8

   A.  This Court Has the Authority to Grant the Requested Relief ...................8

   B.  Plaintiff Guldberg Meets the Standard for Granting a Copyright
Owner's Request for a Temporary Restraining Order and Preliminary
Injunction ................................................................................9

   C.  Plaintiff is Likely to Succeed on the Merits of its Claims that Defendants
Have Engaged in Copyright Infringement and Other Counts.......................12

   D.  Notice to Defendants will cause immediate irreparable harm to Plaintiff
as Defendants will engage in concealment or dissipation of assets ................14

   E.  An *Ex Parte* Temporary Restraining Order is Essential to Prevent
Immediate Injury........................................................................17

   F.  The Harm Defendant Has Inflicted is not Outweighed by any
Countervailing Benefits, The Balance of Hardships Tips in Plaintiffs' favor
and and the Public Interest Is Served by Entry of the Injunction. ...............19

IV.  The Scope of the Proposed *Ex-Parte* TRO is Appropriate ......................21

   A.  Conduct Relief..........................................................................21

   B.  Notification to Customers .........................................................21

   C.  Temporary Disabling of Defendants' Websites.................................21

   D.  Asset Restraint .......................................................................22

   E.  Financial Statements and Limited Expedited Discovery, Including
Immediate Production of Documents, is Necessary .................................23

V.  CONCLUSION ...........................................................................25

# TABLE OF AUTHORITIES

**Cases**

AT&T Broadband v. Tech Commc'ns, Inc., 381 F.3d 1309, 1319 (11th Cir. 2004) ................................................................................................................11

Bautista REO U.S., LLC v. ARR Invs., Inc., 229 So. 3d 362, 365 (Fla. 4th DCA 2017) ..........................................................................................................18

Cambridge Univ. Press v Patton, 769 F3d 1232, 1263 [11th Cir 2014].................12

Cardile Bros. Mushroom Packaging v. Wonder-Land Invs., Inc., No. 09-20894, 2009 WL 936671, at *1 (S.D. Fla. April 6, 2009) ..............................................18

Columbia Pictures Indus., Inc. v. Jasso, 927 F. Supp. 1075, 1077 (N.D. Ill. 1996)15

Deckert v. Independence Shares Corp., 311 U.S. 282, 290 (1940)........................21

Dell Inc. v. Belgium Domains, LLC, Case No. 07-22674, 2007 WL 6862341, at *2 (S.D. Fla. Nov. 21, 2007) ................................................................................11

Fed. Exp. Corp. v. Fed. Espresso, Inc., No. CIV.A.97CV1219RSPGJD, 1997 WL 736530, at *2 (N.D.N.Y. Nov. 24, 1997) .............................................................24

Ferrellgas Partners, L.P. v. Barrow, 143 F. App'x 180, 190 (11th Cir. 2005).........17

Ferrero v. Associated Materials Inc., 923 F.2d 1441, 1449 (11th Cir. 1991). ........17

FTC v. Ryan, No. 1:09-cv00535-HHK, slip op. (D.D.C. Mar. 30, 2009)...............22

FTC v. U . S . Oil & Gas Corp., 748 F.2d 1431 (11th Cir. 1984) ..........................23

FTC v. Univ. Health, Inc., 938 F.2d 1206 (11th Cir. 1991) ...................................24

FTC v. USA Fin., LLC, 415 F. App'x 970, 976 (11th Cir. 2011)..........................22

JonJuan Salon, Inc. v. Acosta, 922 So. 2d 1081, 1084 (Fla. 4th DCA 2006). ........18

Noveshen v. Bridgewater Assocs., LP, 47 F. Supp. 3d 1367, 1376 (S.D. Fla. 2014) ................................................................................................................13

Paschen v. B&B Site Dev., Inc., 311 So. 3d 39 (Fla. 4th DCA 2021) ....................14

Porter v. Warner Holding Co., 328 U.S. 395, 398 (1946)......................................23

Red Cross v. Palm Beach Blood Bank, Inc., 143 F.3d 1407, 1410 (11th Cir.1998) ................................................................................................................10

Suntrust Bank v. Houghton Mifflin Co., 268 F.3d 1257, 1265 (11th Cir. 2001) ....10

TracFone Wireless, Inc. v. Hernandez, 196 F. Supp. 3d 1289, 1302 (S.D. Fla. 2016) ..........................................................................................................20

United States v. First Nat'l City Bank, 379 U.S. 378, 385 (1965) ..........................21

**Statutes**

15 U.S.C. § 1117(a) ..............................................................................................10

17 U.S. C. §501 ....................................................................................................20

17 U.S.C. § 106 .....................................................................................................20

17 U.S.C. § 502 .................................................................................................9,10

17 U.S.C. § 504(b) ................................................................................................10

## I.  INTRODUCTION

Plaintiffs are engaged in the business of creation, sale and marketing of jewelry products and Plaintiff Mikkel Guldberg Hansen is the copyright holder of group of unpublished photographs titled "Celebrating Relationships Jewelry Photoshoot" (the "Works"). Plaintiff submits this Memorandum in support of its Emergency Motion for Entry of a Temporary Restraining Order ("TRO"), including a temporary injunction, a temporary asset restraint, and expedited discovery (the "Emergency Motion").  Defendants are individuals and business entities of unknown make up who operate one or more e-commerce stores that display and infringe Plaintiff Guldberg's Works to solicit sales of jewelry products.

## II.  FACTS

### A. Parties

Plaintiff Awareness Avenue Jewelry, LLC (Hereinafter "Awareness Avenue") is a corporation duly organized and existing under the laws of the State of Wyoming. Plaintiff's principal place of business is located in Florida at 3030 N. Rocky Point Drive W., #150 Tampa, FL 33607. (C ¶ 4)

Plaintiff Mikkel Guldberg Hansen (Hereinafter "Guldberg") is a director of Awareness Avenue Jewelry, LLC. Plaintiff Guldberg licenses his Works to Plaintiff

Awareness Avenue which operates an online store at https://www.awareness-avenue.com/. (C ¶ 5)

Defendants are individuals and business entities of unknown makeup who own and/or operate one or more of the e-commerce stores under at least the Seller Aliases identified in Schedule A and/or other seller aliases not yet known to Plaintiff. On information and belief, Defendants reside and/or operate in the People's Republic of China or other foreign jurisdictions with lax intellectual property enforcement systems or redistribute and upload the Works from the same or similar sources in those locations. (C ¶ 6)

Defendants are foreign individuals or corporations who have both incentive and capacity to hide their assets once warned that their funds are at risk. Defendants are also not likely to submit to the authority of this Court and to preserve sufficient funds to satisfy any judgments that the Court may issue against them. (C ¶ 7)

Tactics used by Defendants to conceal their identities and the full scope of their operation make it virtually impossible for Plaintiff to discover Defendants' true identities and the exact interworking of their network. On information and belief, Defendants either individually or jointly, operate one or more e-commerce stores under the Seller Aliases listed in Schedule-A attached hereto. If Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to amend the Complaint. (C ¶ 8)

Defendants have both incentive and capacity to secret, conceal, transfer or otherwise dispose of their ill-gotten proceeds from their sales of products made by displaying the Works and records relating thereto that are in their possession or under their control. (C ¶ 9)

Defendants have both incentive and capacity to open new user accounts and ecommerce merchant storefronts under new or different names and continue to offer for sale and sell products using the Works with little to no consequence. (C ¶ 10)

Defendants' conduct of soliciting sales via unauthorized use and display of Works on various websites via concealment of identities and use of fake addresses to avoid detection follow similar methodologies and patterns of conduct, in the event that the addresses provided by Defendants are unreliable and their actual addresses are unknown to Plaintiff, an *Ex parte* temporary restraining order is essential to prevent irreparable harm and immediate injury to Plaintiffs.

## B. Defendants' Copyright Infringement

Plaintiff Awareness Avenue Jewelry, LLC is a corporation specializing in the business of creation, sale and marketing of jewelry products. Plaintiff Guldberg is a director of Awareness Avenue Jewelry, LLC and exclusively licensed the Works to Plaintiff Awareness Avenue and is the copyright holder of a group of unpublished photographs titled "Celebrating Relationships Jewelry Photoshoot" (the "Works"). A true and correct copy of the copyright over the Works is attached as **Exhibit-1**.

6

Defendants directly target business activities toward consumers in the United States, including Florida, through at least the fully interactive, e-commerce stores which display Plaintiff Guldberg's Works. Defendants are operating under the seller aliases identified in **Schedule-A** attached hereto (the "Seller Aliases"). (C ¶ 14)

Plaintiff has identified numerous fully interactive e-commerce stores operating independent websites or operating through Amazon, Etsy, E-bay and other platforms, including those operating under the Seller Aliases. These stores are soliciting sales via unauthorized use and display of Works by Defendants and encapsulate a series of occurrences that are connected by a logical relationship. The concealment of identities and use of fake addresses by Defendants to avoid detection follow similar methodologies and patterns of conduct. The addresses provided by Defendants are unreliable and their actual addresses are unknown to Plaintiff. (C ¶ 11)

Upon information and belief, Defendants have infringed and are infringing the copyright in the Works by unlawfully reproducing and distributing identical copies of the Works. (C ¶ 19) The natural and probable foreseeable result of Defendants' wrongful conduct has been to deprive Plaintiffs of the benefits of soliciting sales of products that are showcased in the Works and licensing others to sell products embodying the Works, and to injure Plaintiffs' relationship with present and prospective customers. A comparison of Plaintiff Guldberg's Works and

Defendants' webpages for soliciting sales of jewelry products is attached hereto as **Exhibit-2.**

Defendants apart from copying Plaintiff Guldberg's Works also copy product description of various jewelry products of Plaintiff Awareness Avenue. Customers that do not receive their products or receive counterfeit products have contacted Plaintiff Awareness Avenue for resolution of their issues, under belief that the products were sold by Plaintiff Awareness Avenue. This has caused irreparable harm to Plaintiff Awareness Avenue's goodwill and reputation. (C ¶ 23)

Defendants' deliberate infringement of Plaintiff Guldberg's copyright have greatly and irreparably damaged Plaintiffs, and Defendants will continue to damage Plaintiffs greatly and irreparably unless enjoined by this Court. In the absence of injunctive relief, Plaintiffs will have no adequate remedy at law.

## III.    A TEMPORARY RESTRAINING ORDER SHOULD ISSUE AGAINST DEFENDANTS

### A. This Court Has the Authority to Grant the Requested Relief

This court has personal jurisdiction over Defendants since each of the Defendants directly target business activities toward consumers in the United States, including Florida, through at least the fully interactive, e-commerce stores which display Plaintiff Guldberg's Works. Defendants are operating under the seller aliases identified in Schedule-A attached hereto (the "Seller Aliases"). Specifically,

Defendants have targeted sales to Florida residents by setting up and operating e-commerce stores that display the Works and target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Florida, accept payment in U.S. dollars and, on information and belief, have sold products by utilizing Plaintiff Guldberg's Works to residents of Florida. Each of the Defendants is committing tortious acts in Florida, is engaging in interstate commerce, and has wrongfully caused Plaintiffs substantial injury in the State of Florida. Upon information and belief, Defendants are subject to the personal jurisdiction of this Court because, among other things, Defendant have purposefully availed themselves of the benefits of doing business in this District by providing accessibility to websites and e-commerce stores embodying the Works to solicit sales from the residents of this District. Further, under the Copyright Act, a district court has authority to grant injunctive relief to prevent further violations of Plaintiff Guldberg's copyright under 17 U.S.C. § 502.

### B. Plaintiff Guldberg Meets the Standard for Granting a Copyright Owner's Request for a Temporary Restraining Order and Preliminary Injunction

Here, Plaintiff Guldberg has shown that Defendants have infringed the Works to solicit sales of their jewelry products in furtherance of their ecommerce business. The Works reproduced by Defendants on their e-commerce stores are not just

substantially similar but exact copies of the Works owned by Plaintiff Guldberg. Any remedy for the Plaintiffs would be meaningless if Defendants were allowed to place their assets beyond the reach of this court by transferring them to off-shore accounts and destroying any evidence of their wrongful conduct.

The Copyright Act provides that courts may grant injunctive relief "on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). A party seeking to obtain a preliminary injunction must demonstrate: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction were not granted; (3) that the threatened injury to the plaintiff outweighs the harm an injunction may cause the defendant; and, (4) that granting the injunction would not disserve the public interest. See, Suntrust Bank v. Houghton Mifflin Co., 268 F.3d 1257, 1265 (11th Cir. 2001) (citing Am. Red Cross v. Palm Beach Blood Bank, Inc., 143 F.3d 1407, 1410 (11th Cir.1998)) (applying the test to a preliminary injunction in a Copyright Act case). Cheng Yizhou v Individuals, P'ships, & Unincorporated Associated Identified on Schedule "A", 2022 US Dist LEXIS 222468, at *4-5 [SD Fla Dec. 9, 2022, Civil Action No. 22-23558-Civ-Scola]

Under 15 U.S.C. § 1117(a) and 17 U.S.C. § 504(b) Plaintiff is entitled to recover, as an equitable remedy, the illegal profits gained through Defendants' solicitation, distribution and sales of goods by infringing the Works. An accounting

of profits under § 1117(a) is not synonymous with an award of monetary damages and it is an equitable remedy subject to the principles of equity.

Courts may issue a temporary restraining order without notice to the adverse party where the facts in an affidavit demonstrate the moving party will suffer immediate and irreparable injury, loss or damage before the adverse party can be heard in opposition, and the movant's attorney certifies in writing why notice should not be required. Fed. R. Civ. P. 65(b)(1). Where a defendant's identity is known and notice can be feasibly given, the court may still grant an ex parte seizure order if providing notice to the defendant would "render fruitless the further prosecution of the action." AT&T Broadband v. Tech Commc'ns, Inc., 381 F.3d 1309, 1319 (11th Cir. 2004); Sportswear Co. v 121212, 2021 US Dist LEXIS 259936, at *2 [ND Ga Oct. 21, 2021, No. 1:21-CV-04335-JPB]

The entry of a temporary restraining order would serve to immediately stop Defendants from benefiting from their infringement of the Works to solicit sales of their counterfeit jewelry products and preserve the status quo until such time as a hearing can be held. See, Dell Inc. v. Belgium Domains, LLC, Case No. 07-22674, 2007 WL 6862341, at *2 (S.D. Fla. Nov. 21, 2007) (finding ex parte relief more compelling where Defendants' scheme "is in electronic form and subject to quick, easy, untraceable destruction by Defendants.")

### C. Plaintiff is Likely to Succeed on the Merits of its Claims that Defendants Have Engaged in Copyright Infringement and Other Counts

Defendants' blatant copying of the Works to solicit sales of its jewelry products is not fair use. Section 107 of the Copyright Act codifies the defense of fair use. Under the statute, one may reproduce limited portions of copyrighted works to the extent necessary "for purposes such as criticism, comment, news reporting, teaching, scholarship, or research" without risk of civil penalties.

Defendants will not be able to carry its burden of demonstrating that any of the four factors weigh in favor of a finding of fair use. The first fair use factor, the purpose and character of the use, clearly weighs against a finding of fair use because Defendants' use of the Works is a non-transformative commercial use. As a preliminary matter, there is no question that Defendants' use of the Works is not transformative. Here, Defendants' unauthorized publication of the Works is in no way transformative of the original works. Instead, Defendants republished or reproduced original the Works to solicit sales of their jewelry products.

The commercial or non-transformative uses of a work are to be regarded as 'separate factor[s] that tend to weigh against a finding of fair use,' and 'the force of that tendency will vary with the context.' Peter Letterese & Assocs., 533 F.3d at 1309 (Cambridge Univ. Press v Patton, 769 F3d 1232, 1263 [11th Cir 2014])

Specifically, Defendants' willful infringement has caused substantial harm and injury to Plaintiffs' goodwill and is likely to cause substantial additional harm

to Plaintiffs and threatens to erode the value of the Works and products being sold with aid of such Works.

Defendants' willful direct infringement of the Works to solicit sales of its jewelry products are likely to deceive, mislead, betray, and defraud consumers who are customers of Plaintiffs. Defendants' acts and practices of operating multiple stores that infringe on the Works to avoid detection and copyright enforcement constitute acts of unlawful, unfair or fraudulent business acts and practices within the meaning of Fla Stat 501.204.

Claim of unfair competition amounts to engaging in (1) deceptive or fraudulent conduct of a competitor and (2) likelihood of consumer confusion. Noveshen v. Bridgewater Assocs., LP, 47 F. Supp. 3d 1367, 1376 (S.D. Fla. 2014).

The Works have conferred the benefit of soliciting sales of jewelry products on Defendants. Defendants have knowledge of the benefit they derive from displaying the Works. Defendants have accepted the benefit of the Works by making sales of their jewelry products with the aid of the Works. It would be inequitable for Defendants to retain the benefits of the Works without paying fair value for it. By virtue of the willful direct infringement of the Works, Defendants have been unjustly enriched.

Claim of unjust enrichment requires that: (1) the plaintiff has conferred a benefit on the defendant; (2) the defendant has knowledge of the benefit; (3) the

defendant has accepted the benefit conferred; and (4) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying fair value for it. <u>Paschen v. B&B Site Dev., Inc.</u>, 311 So. 3d 39 (Fla. 4th DCA 2021)

### D. Notice to Defendants will cause immediate irreparable harm to Plaintiff as Defendants will engage in concealment or dissipation of assets

There is good cause to believe that if Plaintiffs proceed on notice to Defendants of this Motion, Defendants can easily and quickly change the ownership or modify domain registration and e-commerce store account data and content, change payment accounts, redirect consumer traffic to other seller identification names, and transfer assets and ownership of Seller IDs / Seller Aliases thereby thwarting Plaintiffs' ability to obtain meaningful relief.

Absent a temporary restraining order without notice, Defendants can and will significantly alter the status quo before the Court can determine the parties' respective rights. If Plaintiff gives Defendants notice of its Motion, Defendants are likely to delete their existing online e-commerce marketplace storefronts, transfer any ill-gotten gains away from the marketplaces and otherwise hide their identities, cover up evidence of their infringing activities and shield their ill-gotten assets to avoid liability and prevent Plaintiffs from achieving a meaningful recovery, including financial compensation and permanent injunctive relief. Foreign parties that sell counterfeit products often "disappear" when notified that their conduct is

unlawful, only to set up a new online storefront under a new identity, with new financial accounts.

Such modifications can happen in a short span of time after Defendants are provided with notice of this motion. Thus, Defendants can easily electronically transfer and conceal the funds sought to be restrained if they obtain advance notice of this Motion and thereby thwart the Court's ability to grant meaningful relief and eviscerate the status quo. As Defendants engage in illegal copyright infringing activities, Plaintiff has no reason to believe Defendants will make their assets available for recovery pursuant to an accounting of profits or will adhere to the authority of this Court any more than they have adhered to federal copyright laws.

Moreover, federal courts have long recognised that civil actions against counterfeiters – whose very businesses are built around the deliberate misappropriation of rights and property belonging to others – present special challenges that justify proceeding on an ex parte basis. See, Columbia Pictures Indus., Inc. v. Jasso, 927 F. Supp. 1075, 1077 (N.D. Ill. 1996) (observing that "proceedings against those who deliberately traffic in infringing merchandise are often useless if notice is given to the infringers").

Third party service providers like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing infringers to "routinely use false or inaccurate names and addresses when registering

15

with these e-commerce platforms." **Exhibit-3**, Daniel C.K. Chow, Alibaba, Amazon, and Counterfeiting in the Age of the Internet, 40 NW. J. INT'L L. & BUS. 157, 186 (2020); see also, report on "Combating Trafficking in Counterfeit and Pirated Goods" prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans (Jan. 24, 2020), attached as **Exhibit-4** and finding that on "at least some e-commerce platforms, little identifying information is necessary or [an infringer] to begin selling" and recommending that "[s]ignificantly enhanced vetting of third-party sellers" is necessary. Infringers hedge against the risk of being caught and having their websites taken down from an e-commerce platform by preemptively establishing multiple virtual store-fronts. **Exhibit-4** at p. 22. Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, infringers can have many different profiles that can appear unrelated even though they are commonly owned and operated. **Exhibit-4** at p. 39. Further, "E-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of [infringement]." **Exhibit-3** at 186-187.

Accordingly, this Court should prevent an injustice from occurring by issuing an ex-parte temporary restraining order which precludes Defendants from continuing to display the Works via the e-commerce stores and websites or modifying or deleting any related content or data and further prevent Defendants

from fraudulently dissipating assets under their control.  Only such an order will prevent ongoing irreparable harm and maintain the status quo.

### E. An *Ex Parte* Temporary Restraining Order is Essential to Prevent Immediate Injury

It is likely that Defendants will continue to sell counterfeit and infringing goods through their e-commerce marketplace storefronts in the absence of the requested TRO. As a result, Plaintiff Awareness Avenue's current and prospective customers will continue to be misled, confused and disappointed by the quality of these products, thereby significantly and irreparably damaging Plaintiffs' valuable goodwill. [T]he loss of customers and goodwill is an 'irreparable' injury. Ferrero v. Associated Materials Inc., 923 F.2d 1441, 1449 (11th Cir. 1991).

Plaintiff Awareness Avenue will continue to suffer lost sales of genuine products as the result of the lower-cost counterfeit products offered for sale by Defendants that mislead consumers by displaying the Works. Defendants fraudulently promote, advertise, sell, and offer for sale goods by infringement of the Works via their e-commerce stores and websites. Defendants, by their actions, are creating a false association in the minds of consumers between Defendants and Plaintiffs. Irreparable injury has been determined to include "loss of control of reputation, loss of trade, and loss of goodwill. See, Ferrellgas Partners, L.P. v. Barrow, 143 F. App'x 180, 190 (11th Cir. 2005).

17

Immediate relief is necessary as Defendants are engaged in infringement of

the Works and Plaintiffs are still unaware of the accurate information or standard

available to measure to loss caused due to Defendants' misconduct. An injury is

irreparable when there is no accurate standard by which to measure the loss. See,

JonJuan Salon, Inc. v. Acosta, 922 So. 2d 1081, 1084 (Fla. 4th DCA 2006).

Irreparable harm is not established if the harm can be adequately compensated

by a monetary award. See, Bautista REO U.S., LLC v. ARR Invs., Inc., 229 So. 3d

362, 365 (Fla. 4th DCA 2017). As mentioned herein, Plaintiffs have sustained losses

in terms of goodwill that Plaintiff and there is no standard available to measure the

loss caused due to Defendant's misconduct.

Relief should be issued without notice so that final relief can be effectuated.

Federal Rule of Civil Procedure 65(b) provides for the issuance of an ex parte TRO,

where it appears that immediate and irreparable injury, loss or damage will result to

the movant before the adverse party or his attorney can be heard in the opposition.

See, Cardile Bros. Mushroom Packaging v. Wonder-Land Invs., Inc., No. 09-20894,

2009 WL 936671, at *1 (S.D. Fla. April 6, 2009). In such cases, ex parte relief is

"indispensable" because it is the sole method of preserving a state of affairs in which

the court can provide effective final relief. See, In re Vuitton et Fils S.A., 606 F.2d

1, 4 (2d Cir. 1979); see also U.S. Mortg. Funding, Inc., 2011 WL 810790, at *2 (ex

parte TRO "necessary to stop continued harm to the public as well as to prevent

dissipation of assets and destruction of records, thereby preserving the Court's ability to provide effective final relief").

It is highly likely that Defendants would conceal or dissipate the scope of copyright infringement and financial gains made by soliciting sales using Works. Further, Defendants are likely to delete data/records and disburse their assets absent ex-parte relief. Thus, ex-parte relief is appropriate to make possible full and effective final relief.

### F. The Harm Defendant Has Inflicted is not Outweighed by any Countervailing Benefits, The Balance of Hardships Tips in Plaintiffs' favor and and the Public Interest Is Served by Entry of the Injunction.

Here, there is simply no countervailing benefit to either consumers or competition that results from Defendants' copyright infringement, especially since there were no-cost and low-cost remedies available, such as conducting search engine reverse image searches before engaging in infringement of the Works.

The potential harm to Defendants in restraining their trade in counterfeit and infringing branded services if a preliminary injunction is issued is far outweighed by the potential harm to Plaintiffs, their reputation, and their goodwill as a manufacturer and distributor of quality services and content, if such relief is not issued. The public interest favors issuance of preliminary injunction order to protect Plaintiffs' intellectual property interests and protect the public from being defrauded by the palming off of counterfeit services as Plaintiffs' genuine services. See, Abs-Cbn

Corp. v 123movie, 2021 US Dist LEXIS 210763, at *9 [SD Fla Aug. 31, 2021, No.
21-61602-CIV-SMITH]

    Plaintiff Awareness Avenue and its potential customers cannot reasonably
avoid the harm that Defendants cause. If Plaintiffs' potential customers do not have
a "free and informed choice that would have enabled them to avoid the unfair
practice" the injury is not reasonably avoidable. Plaintiffs' loss of control over the
Works and loss of goodwill and reputation to their jewelry retail business is
immeasurable and irreparable, while Defendants' hardship would be a mere loss of
expected profits gained from infringement of the Works. The public interest is
advanced by enforcing faithful compliance with the laws of the United States and
the State of Florida. See, TracFone Wireless, Inc. v. Hernandez, 196 F. Supp. 3d
1289, 1302 (S.D. Fla. 2016).

    Defendant's conduct, as mentioned herein, amounts to copyright infringement
provided under 17 U.S. C. §501, has been violative of 17 U.S.C. § 106, Section
501.204 of the FDUTPA, Section 107 of the Copyright Act, unfair use of Plaintiff's
Work without authorization from Plaintiff constitutes unjust enrichment and unfair
competition.

## IV.    The Scope of the Proposed *Ex-Parte* TRO is Appropriate

### A. Conduct Relief

To prevent further copyright infringement and limit future additional harm to

Plaintiff and potential customers, the proposed TRO would prohibit Defendant from:

(1) from using or distributing or displaying copyrighted Works of Plaintiff Guldberg,

(2) from soliciting sales of its counterfeit products by utilizing the Works of Plaintiff

Guldberg.

### B. Notification to Customers

The proposed TRO requires Defendants to provide notification to each person

who purchased jewelry products that Defendants solicited with aid of the Works.

### C. Temporary Disabling of Defendants' Websites

An order provision temporarily disabling Defendants' websites and

suspending their domain name registrations is necessary to prevent further consumer

injury and copyright infringement. Suspending their domain name registrations will

ensure that Defendants cannot evade compliance with any preliminary relief entered

by this Court pending final determination of this matter.

This Court has the authority to direct third parties to effectuate the purpose of

the TRO. See, Cf. Deckert v. Independence Shares Corp., 311 U.S. 282, 290 (1940)

(holding that courts have authority to direct third parties to preserve assets); United

States v. First Nat'l City Bank, 379 U.S. 378, 385 (1965) (same). Courts have

commonly granted similar relief against other defendants who have utilized Internet websites to promote fraud. See, <u>FTC v. Mallett</u>, 818 F. Supp. 2d at 150 (holding that removal of public access to Defendants' websites is "appropriate"); <u>FTC v. SouthEast Trust, LLC</u>, No. 12-cv-62441-CIV-ZLOCH, slip op. at 16 (ordering the disabling of defendants' websites); See<u>, FTC v. Ryan</u>, No. 1:09-cv00535-HHK, slip op. (D.D.C. Mar. 30, 2009).

### D. Asset Restraint

Plaintiff requests an ex parte restraint of Defendants' assets so that Plaintiff's right to an equitable accounting of Defendants' profits from soliciting sales of jewelry products using the Works is not impaired. Issuing an ex parte restraint will ensure Defendants' compliance. If such a restraint is not granted in this case, Defendants may disregard their responsibilities and fraudulently transfer financial assets to overseas accounts before a restraint is ordered. Specifically, upon information and belief, the Defendants in this case hold most of their assets in off-shore accounts, making it easy to hide or dispose of assets, which will render an accounting by Plaintiff meaningless.

The Eleventh Circuit has repeatedly upheld the authority of district courts to order an asset freeze to preserve the possibility of consumer redress. See, <u>FTC v. USA Fin., LLC</u>, 415 F. App'x 970, 976 (11th Cir. 2011) ("Maintaining the asset freeze until the monetary judgment was satisfied was necessary to accomplish

complete justice.") ; <u>Gem Merch. Corp</u>., F.3d at 469; <u>FTC v. U . S . Oil & Gas Corp.</u>,

748 F.2d 1431 (11th Cir. 1984)

Defendants' ongoing fraud demonstrates their willingness to engage in

wrongdoing. The possibility of a large monetary judgment provides Defendants with

ample incentive to conceal or dissipate otherwise recoverable assets. Without an

immediate freeze of Defendants' assets, it is unlikely that funds will remain to satisfy

any final order granting redress to deceived consumers. The Court has the authority

to direct its order to such third parties in order to preserve assets that are easily

dissipated and may be difficult or impossible to trace.

An accounting and financial statements, combined with an asset freeze, will

increase the likelihood of preserving existing assets pending final determination of

this matter.

### E. Financial Statements and Limited Expedited Discovery, Including Immediate Production of Documents, is Necessary

Federal Rules of Civil Procedure 26(d), 33(a), and 34(b) authorize the Court

to alter the standard provisions, including applicable time frames, that govern

depositions and production of documents. This type of discovery order reflects the

Court's broad and flexible authority in equity to grant preliminary emergency relief

in cases involving the public interest. See, <u>Porter v. Warner Holding Co.</u>, 328 U.S.

395, 398 (1946) (holding that when "the public interest is involved in a proceeding,"

the court's "equitable powers assume an even broader and more flexible character than when only a private controversy is at stake"); see also, FTC v. Univ. Health, Inc., 938 F.2d 1206 (11th Cir. 1991) (district court granted expedited discovery to determine if a preliminary injunction should issue); Fed. Exp. Corp. v. Fed. Espresso, Inc., No. CIV.A.97CV1219RSPGJD, 1997 WL 736530, at *2 (N.D.N.Y. Nov. 24, 1997) (early discovery "will be appropriate in some cases, such as those involving requests for a preliminary injunction") (quoting Commentary to 1993 Amendments to Fed. R. Civ. P. 26(d)).

The expedited discovery requested in Plaintiff's Proposed TRO is limited to include only what is essential to prevent further irreparable harm. Discovery of these financial accounts so that they can be frozen is necessary to ensure that these activities will be contained. To preserve the possibility of Plaintiff's redressal for copyright infringement and sales that Defendants solicited using the Works, Plaintiffs request that the Court also order Defendants to make a full financial accounting and order limited expedited discovery. Because Plaintiffs have not yet been able to determine the full scope of copyright infringement, including whether Defendant has posted the Works to websites presently unknown to Plaintiffs, the proposed order also provides for limited expedited discovery. Plaintiffs' seizure and asset restraint may have little meaningful effect without the requested relief. Accordingly, Plaintiff respectfully requests that expedited discovery be granted.

## V. **CONCLUSION**

Defendants' operations are irreparably harming Plaintiffs' business, its well-known brand, and consumers. Without entry of the requested relief, Defendants' infringement of the Works in connection with the soliciting, using, offering to sell, selling, or importing of the counterfeit jewelry products with aid of Plaintiff Guldberg's Works will continue to irreparably harm Plaintiffs. Therefore, entry of an ex parte order is necessary. In view of the foregoing, Plaintiffs respectfully request that this Court enter a Temporary Restraining Order in the form submitted herewith.

Dated: 3rd January, 2023

By: _Michael Hurckes_

Michael A. Hurckes, Esq.
Florida Bar No. 1040918
MAH Advising PLLC
3030 N. Rocky Point Drive W., #150
Tampa, FL 33607
Tel.: (917) 791-0639
*Attorneys for Plaintiffs*