**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**

| | |
|---|---|
| AWARENESS AVENUE JEWELRY LLC and MIKKEL GULDBERG HANSEN<br><br>Plaintiffs,<br><br>v.<br><br>THE PARTNERSHIPS and UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A,",<br><br>Defendants. | Case No.: 8:23-cv-2-TPB-AAS<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** |

Plaintiffs Awareness Avenue Jewelry, LLC and Mikkel Guldberg Hansen, by and through undersigned counsel file this Opposition to Defendants' Motion to Dismiss and state as follows:

### I. INTRODUCTION

The factual background of this matter is more fully set forth in the Complaint. On January 3, 2023, Plaintiffs filed their Complaint on the grounds of copyright infringement by the Defendants, deceptive and unfair trade practices, unjust enrichment, and unfair competition. (ECF [1]). On the same day, Plaintiffs filed an ex parte motion for a temporary restraining order. (ECF [2]), which was granted by an order dated January 18, 2023. (ECF [9]). Plaintiffs further filed a Motion for Extension of the TRO dated 01/25/2023, (ECF [12]), which was granted by an order dated 01/31/2023, extending the TRO until 02/15/2023. (ECF [15]). Thereafter, Plaintiffs filed a Motion for

1

Preliminary Injunction, (ECF [17]), which was granted by an order dated 02/16/2023, (ECF [20]). On 03/24/2023, a Motion to Dismiss for Lack of Jurisdiction by Defendants was filed. (ECF [40]).

## II. ARGUMENT

### A. Defendants were properly served and cannot claim defective service when they intentionally used fake and unreliable addresses.

Plaintiffs conducted extensive research to determine the addresses of Defendants. (Plaintiffs' motion for TRO ECF #2 Ex.2 Seller Aliases). Plaintiffs, to serve the Complaint to Defendants, visited all their websites and conducted extensive internet based searches. The email address and publication were only means available to effect service without Plaintiffs suffering irreparable harm. (**Exhibit-1** Mikkel Decl.) Plaintiffs also conducted extensive searches on google maps and other internet-based searches that clearly showed that there was no physical presence of Defendants at the given address making the addresses fake or unreliable. Defendants with unknown addresses failed to provide any information except email addresses through which service could be made. Defendants have further gone ahead and removed all addresses from their websites. (**Exhibit-2** Defendants' having no registered address visible on their websites)

Service of process by email and publication website is not offensive to China's law or the law of wherever the Defendants may be physically located. First, because Defendants' locations are unknown, the Hague Convention on the

Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 163 ("Hague Service Convention")—and its general requirement physical service of process—does not apply. Hague Service Convention, Art. 1, 20 U.S.T. 361 (1969) (declaring that the "Convention shall not apply where the address of the person to be served with the document is not known"); Chanel, Inc. v. Zhixian, No. 10-CV-60585, 2010 U.S. Dist. LEXIS 50745, 2010 WL 1740695, at *2 (S.D. Fla. Apr. 29, 2010) (noting the Convention did not apply when Defendant's physical addresses were "false, incomplete, or invalid for service of process"); Zhibing, 2010 U.S. Dist. LEXIS 25709, 2010 WL 1009981. Thus, because Defendants' physical addresses could not be determined, Plaintiffs were not prohibited by international law from serving Defendants with process by email or publication website. China has not objected to service of process by electronic means such as email, electronic messaging service, or website publication. Muhammad Ali Enters. LLC v. 857857yedianxiaoge, Civil Action No. 1:22-cv-00297-SDG, 2022 U.S. Dist. LEXIS 98190, at *4 (N.D. Ga. Jan. 26, 2022)

Courts have routinely upheld service by email in infringement actions where online stores' business appears to be conducted entirely through electronic communications. When faced with an international e-business scofflaw, playing hide-and-seek while enjoying fruits of infringement of intellectual property, e-mail becomes the only means of effecting service of process. The Hague Convention neither authorizes nor prohibits service by email—it is entirely silent on the issue. Defendants have not provided any

provision of the Convention that limits a party to the methods of service enumerated in the Convention or that requires a party to exhaust the Convention's methods before pursuing other methods. Convention does not contain an exhaustion requirement and service by email may be unenumerated in the Convention but is not inconsistent' with the Convention. In the absence of a provision affirmatively prohibiting service by email or any reason to believe the Convention bars all unenumerated methods of service, Courts in this circuit have authority to allow service by email as an alternative means of service under Rule 4(f)(3). The Supreme Court's anodyne statement in <u>Water Splash, Inc. v. Menon</u>, 581 U.S. 271 (2017) that the Convention prohibits "inconsistent methods of service" does not dictate otherwise.

Furthermore, Defendants' physical addresses are not known or readily ascertainable, Plaintiff is not required to serve Defendants pursuant to the Hague Service Convention. Additionally, consistent with the findings of numerous other courts, the service on Defendants by e-mail was reasonably calculated under the circumstances to apprise Defendants of the pendency of this action and to afford them an opportunity to appear and be heard. <u>In re Int'l Telemedia Associates, Inc.</u>, 245 B.R. 713 (Bankr. N.D. Ga. 2000). Finally, China has not objected to service of process by electronic means such as email, electronic messaging service, or website publication. CCA & B, LLC v. Anhuaxiansizhichuangdianzishangwuyouxianzerengongs, Civil Action No. 1:22-cv-4594-TWT, 2022 U.S. Dist. LEXIS 240219, at *4 (N.D. Ga. Nov. 22, 2022). Where a signatory nation has objected to the alternative means of service

4

provided by the Hague Convention, that objection is expressly limited to those means and does not represent an objection to other forms of service, such as e-mail. A court acting under Rule 4(f)(3), therefore, remains free to order alternative means of service where a signatory nation has not expressly objected to those means. Astrove v. Doe, No. 22-CV-80614-RAR, 2022 U.S. Dist. LEXIS 184727, at *3-4 (S.D. Fla. May 31, 2022)

Defendant confrontn.com (Defendant #46) was served via publication and provided ample notice by application of ex-parte-TRO which contained the complaint and all exhibits. Defendant confrontn.com (#46) was properly served through alternative means of service. Service by publication on parties in China is not prohibited. Defendants' reliance on Smart Study Co. v. Acuteye-Us, F.Supp.3d, No. 1:21-CV-5860-GHW, 2022 WL 2872297, (S.D.N.Y. July 21, 2022) is misplaced and not binding in this circuit. The case is distinguishable as Plaintiffs did not just find addresses on Defendants' websites but also conducted google maps search and other internet-based searches and have also sought this information from Shopify and Amazon. Any other form of service, before a TRO was granted, would have alerted Defendants and caused irreparable harm to Plaintiffs. Due to Defendants' addresses being unknown, and them operating multiple stores using different aliases, this Court also allowed service by Publication on Defendants. The TRO and preliminary injunction also ordered third-party platforms and financial providers to produce all available contact information, but several of the platforms have only produced only email addresses and not physical addresses and Plaintiffs are still

5

engaged in discovery. Defendants continue to conceal their physical addresses and locations **(Ex.2)**. Even subsequent Second Circuit rulings have permitted email service on primarily online retailers that shield their identities and addresses similar to the instant case. Email service has repeatedly been held to comply with due process for online retailers that operate their business primarily by email but lack any reliable physical address. Mattel, Inc., 2020 U.S. Dist. LEXIS 77660, 2020 WL 2097624, (finding email service "specifically appropriate . . . because 'third-party merchants on DHgate, Alibaba and AliExpress . . . have been known to use aliases, false addresses and other incomplete identifying information to shield their true identities'"). Zuru (Singapore) PTE., Ltd. v. Individuals, Corps., Ltd. Liab. Cos., P'ships, & Unincorporated Ass'ns Identified on Schedule A Hereto, 2022 U.S. Dist. LEXIS 195268 (S.D.N.Y. Oct. 26, 2022). Thus, Plaintiffs properly served Defendants.

### B. Court has jurisdiction over Defendants as they have offered for sale products to Florida residents with aid of Plaintiffs' Works. These are tortious acts which caused injury to Plaintiffs in Florida.

Defendants, without permission or consent from Plaintiffs, copied and distributed the Works in connection with their business, for the purposes of promotion and advertising their business. Defendants directly target business activities toward consumers in the United States, including Florida, through at least the fully interactive, e-commerce stores which display Plaintiff Guldberg's Works. Defendants have targeted sales to Florida residents by setting up and operating e-commerce stores that display the Works and target United States

consumers using one or more Seller Aliases, offer shipping to the United States, including Florida, accept payment in U.S. dollars and, on information and belief, have sold products by utilizing Plaintiff Guldberg's Works to residents of Florida. (**Exhibit-3**, Defendants' websites offering shipping to Florida). Each of the Defendants is committing tortious acts in Florida.

The scope of the long-arm statute is an issue of state law. Cable/Home Commc'n Corp. v. Network Prods., Inc., 902 F.2d 829, 855 (11th Cir. 1990). Florida's long-arm statute permits state courts to exercise jurisdiction over a cause of action arising out of a tortious act committed within Florida. See Fla. Stat. § 48.193(1)(b). Copyright infringement constitutes a tortious act within the meaning of Florida's long-arm statute for purposes of establishing personal jurisdiction. Moreover, "[for the purposes of the statute, the defendant does not have to be physically present in Florida for the tortious act to occur within that state." Internet Sols. Corp. v. Marshall, 557 F.3d 1293, 1296 (11th Cir. 2009). Thus, the long-arm statute permits personal jurisdiction over a nonresident defendant who is alleged to have committed a tort causing injury in Florida. See Posner v. Essex Ins. Co., 178 F.3d 1209, 1216 (11th Cir.1999). Kinon Surface Design, Inc. v. Hyatt Corp., No. 18-81065-CV, 2019 U.S. Dist. LEXIS 13670, at *8-9 (S.D. Fla. Jan. 28, 2019). The tort of copyright infringement occurs at the place of "'passing off' the allegedly infringing item, which is typically the place of sale, rather than the location where the infringing item was copied or created." J. Racenstein & Co., Inc. v. Wallace, 1997 U.S. Dist. LEXIS 14928, 1997

WL 605107, 44 U.S.P.Q.2D (BNA) 1541, 1543 (S.D. N.Y. 1997). Florida Long-Arm Statute, Fla. Stat. § 48.193 provides in part:

> § 48.193. Acts subjecting person to jurisdiction of courts of state.
>
> (1)(a) A person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from any of the following acts:
>
> 1. Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.
>
> 2. Committing a tortious act within this state. ...
>
> 6. Causing injury to persons or property within this state arising out of an act or omission by the defendant outside this state, if, at or about the time of the injury, either:
>
> a. The defendant was engaged in solicitation or service activities within this state; or
>
> b. Products, materials, or things processed, serviced, or manufactured by the defendant anywhere were used or consumed within this state in the ordinary course of commerce, trade, or use.

Defendants caused injury to Plaintiffs' property within the State of Florida by infringing on the Works. Defendants injured Plaintiffs' property, namely its copyright when Defendants displayed and distributed infringing copies of the Works on their e-commerce stores for distribution in Florida. A copyright is considered a form of property. Borden v. Katzman, 881 F.2d 1035, 1038 (11th Cir. 1989). Defendants distributed and displayed infringing copies that were consumed in the State of Florida. In addition, Defendants have advertising on the Internet which was accessible in Florida. Further, it is clear if the allegations of infringing the copyright are proven, Plaintiffs' property in Florida will have been injured by Defendants' actions. Copyright is considered a form of property for purposes of the tort of copyright infringement and

Florida's long-arm statute, Fla. Stat. § 48.193. <u>Precision Software Servs., Inc. v. Fortune Fin. Sys., Inc.</u>, 1998 U.S. Dist. LEXIS 22068 (M.D. Fla. Oct. 13, 1998)

Defendants sold its products with the aid of unauthorized display of the Works knowing that their display of the Works that infringed upon another's copyright and at the time of infringement would be the time that the product was made available for sale or "passed off" to the consumers in Florida. Therefore, the time and place of the injury was to be Florida where Defendants displayed and distributed the Works. The ongoing act of selling products with aid of the Works knowing that these products would be distributed throughout Florida, shows that Defendants should have reasonably known that it could be "haled" into court in Florida if its products infringed upon a copyright of a resident of Florida. Defendants have sufficiently directed their activities towards Florida such that minimum contacts are established. (**Exhibit-4** Durationone sending emails about cart when shipping address is in Florida). A defendant's physical presence is not necessary to commit a tortious act in Florida. Rather, "'committing a tortious act' in Florida under section 48.193(1)(b) can occur through the nonresident defendant's telephonic, electronic, or written communications into Florida." "However, the cause of action must arise from the communications"--"[t]his predicate finding is necessary because of the connexity requirement contained in section 48.193(1). <u>Internet Sols. Corp. v. Marshall</u>, 39 So. 3d 1201, 1208 (Fla. 2010)

One of the events subjecting a party to jurisdiction under Florida long-arm statute is "committing a tortious act within this state." Fla Stat. §

9

48.193(1)(b). <u>Copyright Infringement is a tortious act within the meaning of this provision</u>. Section 48.193(1)(a)(2) allows for the exercise of jurisdiction over a non-resident defendant who commits a tortious act within Florida. However, "a defendant's physical presence is not necessary to commit a tortious act in Florida." <u>Wendt v. Horowitz</u>, 822 So. 2d 1252, 1260 (Fla. 2002). Instead, a nonresident defendant can commit a tortious act in Florida under section 48.193(1)(a)(2) by directing "telephonic, electronic, or written communications into Florida," so long as the tort alleged arises from such communications. <u>Internet Solutions Corp. v. Marshall</u>, 39 So. 3d 1201, 1208 (Fla. 2010). Furthermore, "[a]ccording to precedent binding [in the Eleventh Circuit,] subsection [(1)(a)(2)] extends long-arm jurisdiction over defendants who commit a tort that results in injury in Florida." <u>Woodard-CM, LLC v. Sunlord Leisure Prods.</u>, Inc., No. 20-23104-CV-WILLIAMS/TORRES, 2022 U.S. Dist. LEXIS 25019, at *18-19 (S.D. Fla. Feb. 10, 2022)

The Baoyuan Lin Affidavit [ECF #40 Ex-1] is of little significance to the jurisdictional question. The affidavit primarily explains Defendants' corporate structure and status and how Defendants share digital infrastructure and store management services. It summarily asserts that Defendants never have done business in or directed contacts into Florida and admits certain peripheral connections with the state and denies in a conclusory way any other actions that would bring Defendants within the ambit of the Florida long-arm statute. Such statements, although presented in the form of factual declarations, are in substance legal conclusions that do not trigger a duty for Plaintiffs to respond

10

with evidence of their own supporting jurisdiction. Affidavits containing mere conclusions have no probative value. When a defendant challenges jurisdiction and submits an affidavit as supporting evidence, "the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction," Meier ex rel. Meier v. Sun Int'l Hotels, Ltd., 288 F.3d 1264, 1269 (11th Cir. 2002), as long as the affidavit contains "specific factual declarations within the affiant's personal knowledge." If a defendant's affidavit only contains conclusory assertions, the burden does not shift. Woodard-CM, LLC v. Sunlord Leisure Prods., Inc., No. 20-23104-CV-WILLIAMS/TORRES, 2022 U.S. Dist. LEXIS 25019, at *14 (S.D. Fla. Feb. 10, 2022). The Baoyuan Lin Affidavit [ECF #40 Ex-1] affidavit does not sufficiently controvert the jurisdictional allegations made in the Complaint and the affidavit is of little significance to the jurisdictional question at hand.

Copyright infringement is an intentionally tortious act that may be committed within Florida through an electronic communication into Florida from outside of Florida "so long as the plaintiff's cause of action arises from that communication." Don King Prods. v. Mosley, No. 15-cv-61717-WILLIAMS, 2016 U.S. Dist. LEXIS 188060, 2017 WL 3950930, at *3 (S.D. Fla. Jan. 27, 2016); Kumbrink v. Hygenic Corp., No. 15-cv-23530-COOKE/TORRES, 2016 U.S. Dist. LEXIS 131348, 2016 WL 5369334, at *2 (S.D. Fla. Sept. 26, 2016) ("Placing material on the Internet that is accessible in Florida constitutes an electronic communication into the state."); Louis Vuitton, 736 F.3d at 1352. Further, the DP Clause may be satisfied by a single act of copyright infringement when such an intentionally tortious act is aimed at Florida and causes harm that the

11

defendant should have anticipated would be suffered in Florida. Ramirez v. Grp. Servs., No. 6:16-cv-1831-Orl-37KRS, 2017 U.S. Dist. LEXIS 95265, at *8 (M.D. Fla. June 20, 2017). All parties to a chain of distribution of counterfeit products are jointly liable. Stabilisierungsfonds Fur Wein v. Kaiser Stuhl Wine Distribs. Pty. Ltd., 647 F.2d 200, 207 (D.C. Cir. 1981)(stating that in "copyright infringement cases, any member of the distribution chain can be sued as an alleged joint tortfeasor"). Sportswear Co. v. 121212, No. 1:21-CV-04335-JPB, 2021 U.S. Dist. LEXIS 259936, at *5-6 (N.D. Ga. Oct. 21, 2021).

Plaintiffs engaged in considerable DMCA takedown procedures to prevent copyright infringement. These notices were countered with Plaintiffs having no effective remedy without copyright registration. Plaintiffs' sales and store were also disrupted by malicious DMCA takedown notices submitted by another infringing entity in the chain of distribution **(Mikkel Decl.)** Defendants have failed to provide an explanation or justification for infringing on the Works and from where they have procured the Works and the initial date of unauthorized use of the Works. Plaintiffs have suffered damages in the form of decrease in the number of orders and sales from Florida residents due to Defendant's infringement and unfair trade practices **(Mikkel Decl.)** which also caused damage to its goodwill, which is yet to be ascertained.

**A. Plaintiffs have stated a viable claim.**

1. **Plaintiffs' copyright registration is valid. Publishing photographs on website or social media does not constitute publication or distribution.**

The Copyright Act defines publication as "the distribution of copies or phonorecords of a work to the public by sale or other transfer of ownership, or by rental, lease, or lending." 17 U.S.C. § 101. It states that "offering to distribute copies or phonorecords to a group of persons for purposes of further distribution, public performance, or public display, constitutes publication." It also explains that "[a] public performance or display of a work does not of itself constitute publication." Compendium of the U.S. Copyright Office Practices, Third Edition, Chapter 1902. Thus, Plaintiffs' display of the Works on their website did not constitute publication. The Works were appropriately registered as an unpublished group of photographs. There was no distribution or dissemination of the Works.

Publication occurs when copies or phonorecords are distributed to the public by means of a sale or other transfer of ownership, such as giving copies away. Distributing copies or phonorecords by any other means does not constitute publication. In particular, the legislative history states that "any form or dissemination in which a material object does not change hands… is not a publication no matter how many people are exposed to the work." Compendium of the U.S. Copyright Office Practices, Third Edition, Chapter 1905.1. A public performance or a public display of a work "does not of itself constitute publication." 17 U.S.C. § 101. Compendium of the U.S. Copyright Office Practices, Third Edition, Chapter 1908. Defendants must not be allowed to take contradictory positions. Defendants' claim that statutory damages are not available as the Works are unpublished and on the other hand claim that the

Works were published and the registration is granted erroneously. Furthermore, the issue of registration of the Works is not at issue here. Defendants intentionally manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, retailed, offered for sale and sold counterfeit products, using the Works that are identical or substantially similar to the Works, thereby infringing upon Plaintiffs' rights in violation of 17 U.S.C. § 501(a).

Defendants' assertion that Plaintiffs did not "properly place notice" of the copyrighted work is misplaced. Section 401's notice policy applies only to "published" works. Donald Frederick Evans & Assocs., Inc. v. Cont'l Homes, Inc., 785 F.2d 897, 908 (11th Cir. 1986) (citing 17 U.S.C. § 401(a)). Moreover, "since the Berne Convention Implementation Act of 1988 . . . notice is no longer a prerequisite to copyright protection," Norma Ribbon & Trimming, Inc. v. Little, 51 F.3d 45, 48 (5th Cir. 1995), and thus, the failure to notice a copyright is not an affirmative defense. PK Studios, Inc. v. R.L.R. Invs., LLC, No. 2:15-cv-389-FtM-99CM, 2016 U.S. Dist. LEXIS 116057, at *13-14 (M.D. Fla. Aug. 30, 2016)

Although "the Eleventh Circuit has not yet addressed the role of courts in the cancellation of copyright registrations," Li v. Affordable Art Co., No. 1:12-CV-03523-RLV, 2014 U.S. Dist. LEXIS 190314, 2014 WL 11862796, at *7 (N.D. Ga. Feb. 10, 2014), several courts have held that cancellation is an administrative process handled directly with the Copyright Office, not an issue to be resolved judicially in the first instance. E.g., Brownstein v. Lindsay, 742

14

F.3d 55, 75 (3d Cir. 2014) ("Courts have no authority to cancel copyright registrations because that authority resides exclusively with the Copyright Office."); App Dynamic ehf v. Vignisson, 87 F. Supp. 3d 322, 331 (D.D.C. 2015) ("The authority to invalidate or cancel Defendant's copyright registration lies with the Copyright Office itself."); Li, 2014 U.S. Dist. LEXIS 190314, 2014 WL 11862796, at *7 ("Federal district courts have no inherent or statutory authority to cancel copyright registrations."); Syntek Semiconductor Co. v. Microchip Tech. Inc., 307 F.3d 775, 782 (9th Cir. 2002) (referring issue of copyright registration cancellation to Register of Copyrights pursuant to "primary jurisdiction" doctrine). PK Studios, Inc. v. R.L.R. Invs., LLC, No. 2:15-cv-389-FtM-99CM, 2016 U.S. Dist. LEXIS 116057, at *26-28 (M.D. Fla. Aug. 30, 2016). In fact, the Copyright Act expressly states that "[a]ll administrative functions and duties under this title, except as otherwise specified, are the responsibility of the Register of Copyrights." 17 U.S.C. § 701(a). "Cancellation of a copyright registration is certainly an administrative function, at least as much as issuing a registration is an administrative function." Brownstein, 742 F.3d 55 at 75. As such, the Copyright Office has the exclusive authority to cancel copyright registrations. Therefore, the court concludes federal district courts have no inherent or statutory authority to cancel copyright registrations. Li v. Affordable Art Co., No. 1:12-CV-03523 RLV, 2014 U.S. Dist. LEXIS 190314, at *20-21 (N.D. Ga. Feb. 10, 2014).

The courts generally have been most lenient, under both the 1909 Act and the current Act, with respect to any innocent error contained in an application

for a registration certificate. Simply stated, a misstatement or clerical error in the registration application, if unaccompanied by fraud, should neither invalidate the copyright nor render the registration certificate incapable of supporting an infringement action. 2 Nimmer on Copyright § 7.20 (2022) ¶B

Defendants engaged in copyright infringement under 17 USCS § 106 because any unauthorized reproduction of photographs by them is violation of Copyright Act within U.S. and constitutes acts of direct infringement; because Plaintiffs have sufficiently alleged that Defendants are contributory infringers. Defendants' Motion to dismiss must be denied because whether photographs were properly registered in fact is beyond the limited inquiry that facial attack that summary procedures permit. At this stage of proceedings, the court must accept Plaintiffs' assertions that copyrights in photographs were registered before Defendants' improper and unauthorized use.

The test for contributory infringement has been formulated as "one who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another. The standard of knowledge is objective: "Know, or have reason to know." Casella v. Morris, 820 F.2d 362 (11th Cir. 1987). Anyone who violates any of the exclusive rights of the copyright owner" set forth in 17 U.S.C. § 106 "is an infringer of copyright." Sony Corp. of Am. v. Universal City Studios, Inc., 464 U.S. 417, 433, 104 S. Ct. 774, 78 L. Ed. 2d 574 (1984). Thus, a person who publicly displays a protected work infringes its author's copyright regardless of whether the infringer actually copied the work. Playboy Enters., Inc. v. Frena, 839 F. Supp. 1552, 1556 (M.D. Fla. 1993).

Plaintiffs have suffered damages in the form of decrease in the number of orders and sales from Florida residents due to Defendants' infringement and unfair trade practices **(Ex-1 Mikkel Decl.)** which also caused damage to its goodwill, which is yet to be ascertained. The Copyright Act provides that a "copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages." 17 U.S.C. § 504(b). Plaintiffs have demonstrated that after a reasonable opportunity for further investigation and discovery, it is likely that the evidence will show that Defendant(s) jointly operate and engage in copyright infringement of the Works, share digital infrastructure and/or personnel with manufacturers and are directly related to the manufacturers and/or each other and therefore form a chain of distribution of the infringing products with aid of the Works. Thus, Plaintiffs registration is proper and in the alternative Plaintiffs' alleged inadvertent registration error does not bar their action against Defendants for infringement of its copyright.

## 2. Obscuring identity and business addresses, operating multiple websites that engage in copyright infringement constitute unfair trade practice.

The Eleventh Circuit has adopted the "extra element" test, where state law claims survive preemption challenges if under the state law "an extra element is required instead of or in addition to the acts" required for a copyright claim. Foley v. Luster, 249 F.3d 1281, 1285 (11th Cir. 2001). The extra element

test is "not a rote comparison of the elements of the two claims" and instead requires the court to determine if the state law claim includes a "qualitatively different" element.

The extra element here are Defendants' acts and practices of operating multiple stores with fake and unreliable addresses that infringe on the Works to avoid detection and copyright enforcement and these are acts of unlawful, unfair or fraudulent business acts and practices within the meaning of Fla Stat 501.204. The act of providing fake and unreliable addresses to Florida residents, and malicious DMCA takedown notices are distinct from rights available under the Copyright Act.

## C. Common law claim of unjust enrich enrichment is distinct from copyright law.

Plaintiff Guldberg's Works have conferred the benefits of soliciting sales of jewelry products on Defendants. Defendants' malicious DMCA notices also caused disruption to Plaintiffs' store **(Mikkel Decl.)** providing unjust benefit to Defendants' stores in the form of lost sales and damage to goodwill of Plaintiffs. These acts are distinct from elements of Copyright Law.

## D. Plaintiffs have provided extensive evidence of copyright infringement for each website and Defendant. The complaint is not a shotgun pleading.

Compl. [ECF #1 Ex-4) clearly lists all the instances of infringement against each of the Defendants along with their unreliable addresses and causes of action against each of the Defendants. Defendants themselves and their acts

are so interrelated that it is nearly impossible to separate their infringing actions in perfect sequence. 1-800-411-I.P. Holdings, LLC v. Ga. Injury Ctrs., LLC, 71 F. Supp. 3d 1325, 1330, 2014 WL 6775506, at *4-5 (S.D. Fla. 2014) (denying motion to dismiss counts of complaint based on "shotgun pleading" argument where plaintiff alleged that "Defendants acting through their companies . . . collaborated to trade on Plaintiff's goodwill, and each participated in the conduct supporting each of the claims in this action.")

A plaintiff may plead claims against multiple defendants by referring to them collectively, for example by referring to a group of defendants as "defendants." Crowe v. Coleman, 113 F.3d 1536, 1539 (11th Cir. 1997). These collective allegations are construed as pertaining to each defendant individually. The practice only runs afoul of the applicable pleading standard where it denies a defendant notice of the specific claims against it. Frazier v. U.S. Bank Nat'l Ass'n, No. 11-8775, 2013 U.S. Dist. LEXIS 45330, 2013 WL 1337263 (N.D. Ill. Mar. 29, 2013) (holding that group pleading did not render complaint infirm where complaint provided fair notice of claims). Exist, Inc. v. E.S.Y., Inc., No. 14-62429-CIV-BLOOM/VALLE, 2015 U.S. Dist. LEXIS 181144, at *12 (S.D. Fla. May 20, 2015) Plaintiffs have provided adequate notice of infringing activities pertaining to each of the Defendants with screenshots of their e-commerce stores.

### E. Attorney's fees

At this initial stage of the litigation, the Court should not strike Plaintiff's request for statutory damages and attorney's fees because it is not certain that

Plaintiff will not be entitled to either or both. Defendants assertion that the dates of the infringing acts attached to the Complaint suggest that the Defendants infringement started several months before Plaintiff registered the Works. However, it is too early in the litigation to definitively establish when any alleged copying started or ceased. See <u>Home Design Servs. v. Dura-Craft Homes, LLC</u>, No. 5:14-cv-90-Oc-22PRL, 2014 U.S. Dist. LEXIS 192200, at *11-12 (M.D. Fla. Dec. 4, 2014) Thus, Plaintiff's claim for statutory damages and attorney's fees should not be dismissed at this stage.

### III. CONCLUSION

For the foregoing reasons, Defendant's Emergency Motion to Dismiss must be denied.

Date: April 21, 2023

> MAH ADVISING PLLC
> <u>By: /s/ Michael A. Hurckes</u>
> Michael A. Hurckes, Esq.
> Florida Bar No. 1040918
> 3030 N. Rocky Point Drive W., #150
> Tampa, FL 33607
> Tel.: (917) 791-0636
> *Attorney for Plaintiffs*